The lawyers who are going to argue before the court, please approach the bench and introduce yourself to the court. Michael McCutcheon on behalf of Appellant John Crane. Jennifer Gilman on behalf of Appellate Sharon Daniels. Okay, for the appellant, do you want to reserve some time for rebuttal? Yes, please. Okay, you're only going to have 15 minutes, you understand? Okay, let's proceed. May it please the court. Your honors, this is an appeal from a jury's verdict in an asbestos products liability case of over $6 million against my client, John Crane, in which I ask this court today to grant John Crane a new trial on all issues. Counsel, I have a question. In terms of the jury verdict, why shouldn't this court follow our Supreme Court's decision in writing? In writing? On the verdict form. On the verdict form, right. Your argument is that we shouldn't follow Reddy. Why shouldn't we follow Reddy? Well, I don't believe that was the argument, your honor. I think Reddy says that all settling defendants should not appear on a verdict form, correct? I read that decision yesterday, and I think it's important to note that in that case, all of the settling defendants had reached good faith settlements. And that is why the court said those should not be on the verdict form. I don't believe that case stands alone for the proposition that if you settle in any capacity, you don't go on the verdict form if there is a pending counterclaim under the Contribution Act. You need to have a good faith finding. And if we would like to address that particular part of the appeal first, I don't know if there's any more questions. I would like to concentrate personally on the jury instruction issues, if that's, if it pleases the Court. The jury instruction issues here cover two jury instructions, one with regard to proximate cause and one with regard to duty. And in the Court's errors below lessened the plaintiff's burden as to both establishing duty and establishing proximate cause. With regard to proximate cause, the jury instructions did not inform the jury of the materiality requirement that is contained within the substantial contributing factor test for the cause of fact portion of proximate cause. With regard to duty, our submitted instruction number six dealt with the knowledge component of duty. In a duty to warn case such as this that's presented under a negligence theory, under the McKinney case decided out of the Fourth District, there must be a knowledge component before the defendant can be found liable. That component was completely missing from the jury instructions in this case. There is not a single jury instruction in all of them that were either submitted in writing or given to the Court orally that informed them of that knowledge requirement. But as to the first, I'm going to tackle the proximate cause issue first. Cause and fact, as you know, has, takes two forms. You can have but-for cause and fact or you can have substantial cause, substantial factor cause and fact. And in this case, it's undisputed that the plaintiff chose, as it is her right, to try this case under the substantial factor theory. And you can find that admission at the plaintiff's brief at page 27. Plaintiff's specific causation expert, Dr. Abraham, testified using the substantial factor phrase when he was assigning liability to John Crane. Plaintiff's counsel argued in closing arguments that Dr. Abraham had established that JCI was in fact, quote, a substantial contributing factor, unquote, in the development of Mr. O'Reilly's disease. JCI's theory of defense was that its products do not release enough asbestos fibers to cause any disease or to cause any harm to Mr. O'Reilly whatsoever. There was scientific evidence presented to support that from Dr. Middle and others. John Crane's defense was also that insulation products release fibers at a much higher level and much higher potency and that he was exposed to those much more frequently at a higher level, that that was the sole proximate cause of his injury. And in spite of the fact that it's undisputed that the substantial factor causation issue was the one the plaintiff chose and what was litigated in front of the jury, the jury instruction that the plaintiff proposed was the standard Horn 1501, which was last modified in 2007 before the case of Nolan was decided. And in Nolan, the Supreme Court held for the first time that other exposures from other products could be introduced to the jury to allow them to decide whether or not a particular defendant's product was the cause of the plaintiff's illness. I submit to you that IPI 1501 was incorrect, or at least insufficient in this case, because it doesn't adequately address what the proximate cause standard is in an asbestos case. First, it was error to give it because it did not reflect JCI's theory of the case, that is that its products were not, didn't release fibers sufficient enough to cause disease. In Mikulojik v. Ford Motor Company, the Supreme Court in 2008 said that a party has a right to a jury instruction on its theory of the case. John Crane's theory of the case was that these fibers did not rise to the level to cause disease. It should have been given in a jury instruction on substantial contributing factor that included the materiality component of that. Second, it does not accurately reflect the law of proximate cause in multi-causative agent cases. It was an error to give the standard form IPI when there was another one that could have been given that JCI submitted that accurately reflected the law as set forth by the Supreme Court in Thacker and Nolan. And the trial court essentially abdicated its duty to help the parties come up with an accurate jury instruction to submit to the jury by saying simply the IPIs are what they are. That is not what the trial court is responsible for doing. It needs to present under Rule 239 jury instructions that accurately reflect the law. I'm not saying that a substantial factor instruction has to be given in every case, but the way that this case had been submitted both by the plaintiff and by the defendant, it was the correct instruction to give and should have been given. The problem with IPI 1501 is that it lacks the materiality component that Thacker and Nolan both require. In Nolan, and I'm quoting from the decision, the defendant's conduct is a cause of an event if it was a material element and a substantial factor. We have read the briefs and record and everything on this case. And you have a number of issues and you don't have that much time. If you could only talk about one issue, then I guess I'll just let you go. Okay. I appreciate that, Your Honor. Let me just finish. We've read these cases. We know what they say. Let me just finish then by, I guess, in this part explaining what the prejudice is. The prejudice here lies in the jury being able to assign fault to JCI for exposures for cumulative from other products in a cumulative way because of the way that the plaintiff's specific causation expert, Dr. Abraham, testified. Plaintiff's counsel intentionally inflated these exposures in his closing argument when summarizing Dr. Abraham's testimony. And I can read that to you here because I think it's important.  It has been accepted generally that asbestos is a carcinogen, a cancer-causing agent. Any sort of asbestos exposure can contribute to asbestos-related disease. So whether it's formed as gaskets or from insulation or something else, it's asbestos that's the issue, not the kind of product from which it comes. That's important. It's the asbestos, not the product. And that's the problem here is that the evidence was cumulative. He testified that every single exposure, no matter how slight, was a contributing factor to the disease. Without an instruction explaining that that had to be material, as to John Crane, it was prejudicial error not to give it. As to the second jury instruction error with regard to proposed instruction number six, it related to state-of-the-art. In McKinney v. Hobart, there was a fourth district opinion in 2018. It was held that it is not the knowledge of the dangers of raw asbestos or asbestos generally that matters, but instead the plaintiff must establish that the defendant or the defendant's industry as a whole knew of the propensity of the product to cause harm before a duty to harm arises. McKinney was based on the Supreme Court's decision in Woodhill v. Park-Davis, which held that it's the defendant must have knowledge that the product is dangerous before a duty to harm is presented. The plaintiff concedes this is the law of Illinois, but there was nothing in the jury instructions that explained this knowledge component, whether it be the defendant, JCI's knowledge, or the knowledge in the industry in general that gasket and packing products could cause mesothelioma if used in the way that the plaintiff's decision used them. JCI's theory of the case, its defense, was that it did not know and had no reason to know that the encapsulated asbestos products, the gaskets and packing that were being used, could pose a health risk to Mr. Riley. JCI presented expert testimony to this effect. JCI cross-examined the plaintiff's historical expert on asbestos, who admitted that, as of the 1970s, there were no known health risks that related to gaskets and packing. The plaintiff, in turn, argued in closing that JCI knew that its products were unsafe, but based all of that argument on testimony related to raw asbestos and the dangers associated with raw asbestos and its use in the manufacturing facility where John Crane made its products. None of that evidence related to in-the-field use of these products, such that JCI would have known at that time, during Mr. Riley's exposure period, that its products could cause disease, or that the industry in general knew that asbestos packing could cause disease. The phrase, state of the art, was used no less than 40 times during the trial of this case. JCI submitted a jury instruction which tracked what comes from McKinney in terms of what state of the art means and the consequences of it with regard to knowledge of the defendant or the knowledge of the industry in general. And from the Mikulajic v. Ford Motor Company, which was quoting Hestey v. Roberts, in Illinois Supreme Court case from 2007, litigants have the right to have the jury instructed on each theory supported by the evidence, whether the jury would have been persuaded is not the question. All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction. The evidence may be insubstantial. The only reason the trial court gave for not giving a state of the art instruction, which contained this critical knowledge component to the duty to warrant claim, was that McKinney wasn't binding on the court. Well, that's not true. There is no conflict about this. McKinney was based on the Supreme Court's decision in Woodhill v. Park Davis, which remains the law today. The prejudice in this was that the failure to give it improperly lowered the plaintiff's burden of establishing that a duty was owed to O'Reilly by removing the knowledge component. There is, again, no reference in any of the jury instructions whatsoever as to this knowledge component for a duty to failure to warrant. Prejudice was also because the jury was left without any guidance on how to evaluate the evidence incurred about JCI's lack of knowledge about the dangers posed by its products and the expert testimony that followed on. The record is replete with references to what JCI knew or didn't know, what JCI should have known, what the industry knew or didn't know in general, but the jury was left with no instruction whatsoever to explain what to do with that information or that evidence. And finally, JCI was prejudiced because it allowed JCI to be held liable by the jury based on the properties of raw asbestos and not the properties of its encapsulated gas-packing products. Now, again, read from the closing argument. It's not the product that's important. It's the asbestos, okay? That's the core of the error here. You know, your time is almost exhausted. Do you want to save some time for rebuttal or do you want to go through it? Four minutes. You still have a couple of minutes, but do you want to save some time for rebuttal? I will save some time for rebuttal. Thank you very much. Good morning, Your Honors, and may it please the Court. I'd like to use my time today to answer any questions the Court has and respond to a few issues that have been raised by defense counsel in argument today. And I would like to begin with the jury instructions. How did the defendant's non-IPI instructions mistake the law? I will start with the Court's permission with 4 and 5, with instructions 4 and 5 on proximate cause. We argued in our brief that the use of the word substantial in the jury instruction is misleading to the jury because the word substantial is capable of a couple of different meanings, a couple of different definitions as it's used not in the law but just among people. One of them is something that's material. That's how we use it in the law. But the other has to do with quantity. It means a great amount. We argue this in our brief, and as a response in the reply brief, defendant says we don't have any basis for making such a distinction. I'd like to point out to the Court a couple of cases where the same decision has been reached. There is an Arizona Supreme Court case. It's McDowell v. Davis. That's 448P2D869, where it was found reversible error to use the word to use substantial factor in the jury instructions. And the Court reasoned precisely, as we have reasoned in our brief before this Court, that Webster's International Dictionary notes that there are two definitions for the word substantial. One means not imaginary or elusive. And the Court in Arizona said if that, if we could be confident that all of the jurors would understand the word substantial in that meaning, it would be one thing. But there's another definition for the word substantial, and it's abundance or plentiful or considerable in amount. Commonly we speak in terms of a substantial amount as, for instance, a substantial meal or a substantial income. And if this is the meaning that's attributed to the word, the instruction is palpably erroneous as inducing the concept of largeness as opposed to smallness. This is the same problem that the Court noted in the case of Waymire v. UNR Industries. That's a Fourth District decision that was discussed at length in the Thacker decision. And the Waymire Court discussed its response to defendants' objection to the fiber drift theory. And the Waymire Court said that the defendant is objecting to the fiber drift theory because it seems to think that substantial factor means that the plaintiff has to show exposure to a substantial number of fibers. That was italicized in this decision, a substantial number of fibers. And the Waymire Court said the substantial factor test is not concerned with the quantity of the injury-producing agent or force, but with its legal significance. This is a case that's discussed at length in the Thacker decision. So I think all of this is contained within Thacker itself. If, for instance, a teacher were to say to a group of students, the final exam that will be a substantial factor of your grade, and then it turned out that the final exam was only worth 3 percent of the grade, a student would feel that he had been misled. This is precisely what we're talking about here. Thacker addressed a situation where 3 percent of the asbestos that the plaintiff had been exposed to was from the defendant manufacturer, and nonetheless, the Thacker Court found that it could not say as a matter of law that that was not a substantial factor. And so our objection to Instructions 4 and 5 is that by giving the jury the word substantial, this is the road that the instruction would take the jury down. It would have been misleading. It would have been a reversible error to give that instruction. I'll move on to Instruction Number 6. In Instruction Number 6, the defendant proposed to instruct the jury that once it is established that the knowledge existed in the industry of the dangerous propensity of the defendant's product, then the plaintiff must establish that the defendant did not warn in an adequate matter of the danger. We object to this phrase, once it is established that the knowledge existed in the industry of the dangerous propensity, because this is a negligence case, and we were obligated to show what the defendant knew or should have known, that the defendant exercised ordinary care, and this puts the focus on what the industry knew. We didn't have to prove what the industry as a whole knew. We just have to show the defendant did not exercise care. Defendant brings up the McKinney decision. Our case is so unlike the McKinney decision that it doesn't apply. In McKinney, the plaintiff worked and was exposed to the defendant's product for a period of seven months. For seven months, and then over the course of his 40-year career, he worked with brakes that had asbestos in them. Mr. O'Reilly, the plaintiff in this case, worked with defendant's products. He testified that he worked with them throughout his career as a pipefitter. There was evidence in our case of how the products, the asbestos products were how Mr. O'Reilly worked with them. He cut them, he used a sander on them, he grinded them. These are all things that produced asbestos dust. In the McKinney case, there was insufficient evidence of a manner of using the asbestos products that would produce dust. The most that could be said in that case is that when the welding rods were jostled about in the box, that could produce asbestos dust. Or when they fell on the floor, that could produce asbestos dust. So there are big differences there, too. In addition, using the way defendant has used McKinney in its argument is improper. Defendant quoted from the McKinney decision saying it must be established that knowledge existed in the industry of the dangerous propensity of manufacturer's product. That's a quote from Paragraph 72 of the McKinney decision. But in Paragraph 59 of the McKinney decision, it says exactly what our point is today. The defendant had a duty to warn plaintiff in 1962 and 1963 only if during those years defendant knew or should have known that its welding rods could release restful asbestos fibers. The emphasis here is on defendant, so there's the possibility in the McKinney case as well that you could show what the defendant knew or you could also show what was known in the industry. And so the instruction that defendant wanted to give, instruction number 6, would have been misleading to the jury because it would have put the emphasis on the defendant. Kagan. It's just incorrect. Yes, it's incorrect. Thank you, Your Honor. I will move on to the question of good faith findings. I have a few more minutes. I wanted to follow up, Justice Reyes, on the question you asked about Reddy. Even if Reddy does not stand for the proposition that settling defendants should not be on the jury verdict form, even if it's narrower than that, even if it means only settling defendants who have a good faith finding, there is still no reason for any other defendant to have been put on the jury verdict form in this case. And that's because the defendant in this case did not have a contribution, a claim for contribution against any other defendant. Now, defendant has argued that it had a deemed claim. And that was under the standing order for asbestos cases in Cook County. But the standing order for asbestos cases in Cook County lays out some requirements for maintaining a counterclaim, and defendant didn't abide by those. The standing order says that the assigned trial judge shall require the remaining defendants to identify the counterdefendant subject to counterclaims and pay the filing fee for a counterclaim prior to commencement of jury selection in a particular case. And no defendants were identified as subject to counterclaim, and no filing fee was paid. And defendant doesn't address that in its reply. So the counterclaims were not perfected pursuant to the procedures set out by the Court. Yes, Your Honor. That's correct. In addition, there's another sentence in this standing order that's important here. It says that the first sentence of the standing order is that, in all pending and future asbestos cases, counterclaims for contribution against other defendants in a case are deemed filed as of the date of entry of the defendant's appearance by each defendant remaining at trial against each other defendant remaining in the case, remaining in the case. As of the time of jury instructions, six of the defendants who had settled about whom defendant is complaining before this Court, they were no longer in the case. They'd already been dismissed, including General Electric. I'd like to point out to this Court it was an error in our brief that we intended to submit the dismissal form that the judge had signed for GE, and inadvertently we submitted an unsigned form by the Court. And so I want to bring to the Court's attention that the GE dismissal order is at 7864 in Volume 10 of the record. The other defendants who had settled with plaintiffs before this case went to trial, Crown Court and Seal, the dismissal order is at 2002 in Volume 2. Owens, Illinois, had been dismissed by the filing of the third amended complaint, which did not contain Owens, Illinois, and under 735 ILCS 52-616. Amendment can dismiss any defendant. GE, as I said, was dismissed in 7864 in Volume 10. Train had a good faith finding and was dismissed, and that's included in our appendix. Crane's dismissal is included in our appendix, and Wild McClain's is as well. That leaves only two defendants who were remaining in the case at the time this case went to trial. That's Westinghouse and Metropolitan Life. Westinghouse got an order of good faith finding from the Court. Metropolitan Life, the defendant did not ask to have Metropolitan Life put on the jury verdict form and really couldn't have because there wasn't any evidence that was put to the jury about Metropolitan Life. I see I'm quickly running out of time. I would ask that the Court ---- I'm sorry. Allergies. I understand, Your Honor. There not only isn't an accumulation of errors here that leads up to reversible error, there simply weren't any errors at all in this case, and I would ask the Court to affirm the jury verdict and the Court's judgment. Thank you. Your Honor, if I may, there is nothing misleading about instruction number 4 or number 5. They are based entirely on the Supreme Court's decisions in Thacker, Nolan, and First Springfield Bank. Number 5 defined what substantial factor is by saying a defendant's conduct is a  Number 4, the defendant's conduct is a material element. about an injury, if absent that conduct, the injury would not have occurred. That is straight out of First Springfield Bank. The argument made that there would be some difficulty in distinguishing between quantity, proximity, and otherwise. Isn't First Springfield Bank a non-asbestos case? It is a non-asbestos case, Your Honor. I just wanted to make it in my head when you said that. It is, but the whole problem here is not that you have to give a substantial contributing factor instruction in any asbestos case. The issue is that the plaintiffs presented a case through their expert witness, Dr. Abraham, that said any exposure, no matter how slight, is a substantial contributing factor. And the Court, the Seventh Circuit, recently, a couple of years ago, had the opportunity to address that same sort of testimony, that this cumulative exposure, each and every exposure, it's the same thing. And there it says, the Court said, that requiring a defendant to exclude a potential cause of the illness, therefore, improperly shifts the burden to the defendants to disprove causation and nullifies the requirement of, quote, the substantial factor test. That's what happened here. The way the plaintiff put the case in, and without an instruction about the proximate cause portion of this case, that and Nolan has reminded that the plaintiff always has the burden of proof when it comes to the proximate cause, but it was turned on its head here because of the lack of instruction. And with regard to instruction number six, I would just remind you, if there's only one thing you take away from this, a negligent duty to warn case requires that the plaintiff establish that the defendant had knowledge or should have had knowledge based on what was known in the industry. The jury was left with no instruction on that issue whatsoever. You said based upon what was known in the industry. Based upon what's known in the industry. That's the should-have-known component of failure to warn. It's either proven through what the defendant knew, I agree with that, or what it should have known based on what was known in the industry. That's known as state-of-the-art. The jury was left with nothing. No instruction on this whatsoever. It didn't know what to do with the 40 times it was told state-of-the-art during the course of the trial. It was left to do nothing with how often it was told GSA did know or didn't know something. And, again, from the Supreme Court precedent object, it says a defendant, any party, any party, has a right to a jury instruction that sets forth its theory of the case.     they were given a superior opinion of the case. JSCI was deprived of that with regard to archives and records. Your time is already up, but these arguments are all in the brief. Understand, Your Honor. Is all there. I would submit... I would just ask one more thing, that you reverse entirely the trial court's